Ramon Luis GALAN et al., Plaintiffs,

v.

John DUNLOP, Secretary of Labor, et al., Defendants,

and

Farm Labor Executive Committee et al., Intervenor-Defendants.

Civ. A. No. 75–1454.

United States District Court, District of Columbia.

Sept. 10, 1975.

As Amended Nov. 14, 1975.

Katherine S. Gr~ ~eck, Atty., Migrant Legal Act⋅ ⌐am, Inc., Washington, D ⌐ .aintiffs.

p⋅ ⌐aifetz, Atty., Dept. of ⌐shington, D. C., for defend-

⌐harles A. Hobbs, S. Steven Karalekas, Washington, D. C., for intervenor-defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GASCH, District Judge.

This case was first brought to the attention of the Court on Friday, September 5th when, after consideration of the pleadings and the affidavits and representations of counsel, the Court entered a partial temporary restraining order and set the matter for hearing on preliminary injunction on Wednesday, September 10th at 10:00 A.M. Upon the agreement of all counsel, this hearing was considered a hearing on the merits looking toward the grant or denial of final injunction. The Court considered the pleadings submitted by the respective parties, as well as an additional intervenor, Shoreham Apple Producers' Cooperative, Inc., and heard testimony from two witnesses offered by the Secretary of Labor, Dr. Daniel Sturt, Director of the Rural Manpower Service of the Department of Labor, and Mr. John Tilelli, a Rural Manpower and Development Specialist for the Department of Labor, and two witnesses called by the intervenor Farm Labor Executive Committee, namely, Mr. Harold F. Edwards, Chief Liaison Official, British West Indies, respecting the situation involving Jamaican farm workers, and Mr. Marvin C. Peck, Manager of the Valley View Orchards and President of the New England Apple Growers Council, and upon consideration of the affidavits and testimony and the arguments of counsel, the Court makes the following

## FINDINGS OF FACT

1. Plaintiffs are a group of Puerto Rican agricultural workers, as well as one from Clarksdale, Mississippi, presently in New York, who desire to work in the apple harvest this fall in the northeastern states. They seek to bring this action on behalf of those similarly situated.

2. Defendants are respectively the Secretary of Labor and the Commissioner of the Immigration and Naturalization Service.

3. The intervenors are the Farm Labor Executive Committee, which represents apple growers in 10 east coast states, including Maine, New Hampshire, Vermont, Massachusetts, Connecticut, Rhode Island, New York, Maryland, Virginia and West Virginia. The second intervenor is the Shoreham Apple Producers' Cooperative, Inc. of Shoreham, Vermont.

4. Plaintiffs contend that the defendant Secretary and those acting in concert with him have deprived plaintiffs and other workers similarly situated of available apple orchard jobs in the east coast states and have wrongfully certified a need for temporary foreign workers to take these jobs, and that pursuant to said certification, the defendant Commissioner of Immigration and Naturalization Service has granted, or will soon grant, visas to temporary foreign workers on the basis of the Secretary's certification.

5. This complaint seeks to restrain such governmental action.

6. Under existing law foreign farm workers may not be employed unless and until it is determined and certified by the appropriate federal officials that there is an insufficient supply of domestic workers to fill the employment need.

7. Apple growers in the past have experienced difficulties in obtaining certification of a sufficient number of foreign workers to supplement the domestic labor force.

8. The Secretary of Labor has established procedures which require an employer who wishes to import temporary farm laborers from outside the United States to prove that he has made substantial recruitment efforts on his own and filed a clearance order with the employment service. 20 C.F.R. 602.10 *et seq.*

9. With respect to the 1975 east coast apple harvest, the Secretary has determined that the apple growers have made substantial recruitment efforts and have been unable to recruit a sufficient number of domestic workers. Accordingly, he has authorized the apple growers to import no more than 4,839 foreign farm workers for the purpose of assisting in the harvest of apples in the states heretofore mentioned.

10. Prior to making his finding with respect to the need for foreign farm workers, the Secretary was aware that the clearance orders had been referred to Puerto Rico and to states from which, in the past, domestic farm workers had been recruited for the purpose of assisting in the harvesting of apples in the northeast area of the country.

11. The Puerto Rico Employment Service, however, was unable to refer any farm workers for this project because under the laws of Puerto Rico employers may not recruit workers for work outside of the Commonwealth unless employers have first negotiated a contract with the Secretary of Labor of Puerto Rico.

12. The terms and conditions of the proposed contract negotiated with the Secretary of Labor of Puerto Rico are more extensive and onerous insofar as the employers are concerned in that, among other things, these terms require that disputes incident thereto be adjudicated in the courts of Puerto Rico, and that three hot meals a day be provided for the workers in the field and that insurance benefits more extensive than those required by the defendant Secretary of Labor be provided and that the employers post performance bonds.

13. Unless employers enter into such a contract prior to attempting to recruit workers in Puerto Rico, they may under Puerto Rican law be subjected to criminal prosecution. No such requirement exists insofar as recruitment activities are concerned in any of the states from which workers are drawn for this program.

14. The growers attempted to negotiate a contract with the Puerto Rican authorities but were unable to reach agreement on all of the terms.

15. One of the principal difficulties encountered was insistence on the part of the Puerto Rican authorities that there be no limitation (except to the extent that the resources of the Puerto Rican government precluded it from monitoring more than 2,604 workers) upon the number of workers drawn into this program from Puerto Rico, whereas because of the additional cost of Puerto Rican workers to the growers and difficulties previously encountered with respect to such workers in other agricultural pursuits, the growers sought to negotiate a contract involving no more than two or three hundred workers. This was unacceptable to the Puerto Rican authorities.

16. In view of this situation, the defendant Secretary of Labor determined that Puerto Rican workers were not available for the apple growers and accordingly, certified that domestic workers were not available in sufficient number and for that reason referred the matter to the Attorney General for the consideration of the Commission of the Immigration and Naturalization Service

for the issuance of visas to the required number of foreign farm workers.

17. In accordance with the testimony received in open Court to the extent that farm workers from Florida and the continental United States are available to work in this project, they have been placed therein by the growers. The testimony further indicated that opportunity for placement continues and that available domestic farm workers may continue to be placed.

18. The intervenor known as Farm Labor Executive Committee, aware of losses sustained in prior years through inability adequately to harvest the apple crop, determined that a concerted effort should be made to eliminate crop losses attributable to an insufficient work force. This determination was made in the latter part of 1974.

19. Accordingly, the Farm Labor Executive Committee met with federal officials in the Department of Labor well in advance of the harvest season which usually begins about the 1st of September, for the purpose of working out procedures by which the growers would be assured an adequate labor force from domestic sources and, if necessary, by the importation of foreign farm workers.

20. These meetings commenced in early February, 1975, and included representatives of the Puerto Rican government, who sought to place Puerto Rican workers in the 1975 apple harvest.

21. Puerto Rico is a participant in the interstate clearance system which operates nationally and by terms of which employers in labor demand states may recruit qualified workers in labor surplus states. However, the laws of Puerto Rico make it difficult for its workers to enjoy the benefits of the interstate clearance system as previously pointed out.

22. Puerto Rico is the only participating jurisdiction in the interstate clearance system which has sought to intervene in the employer-employee relationship. Reasonable and extensive efforts were made to find a sufficient number of qualified domestic workers to assist the apple growers in the northeastern states and since these efforts did not result in finding a sufficient number of qualified and available domestic workers, there exists a clear factual basis for the Secretary of Labor to certify the need for the importation of foreign farm workers and for the Commissioner of the Immigration and Naturalization Service to permit the entry of foreign farm workers into the United States for this limited purpose.

23. The testimony indicated, and the Court finds, that unless an adequate number of qualified farm workers are available, including those presently contemplated from foreign sources, that the apple growers will sustain an immediate and irreparable injury estimated by Mr. Peck, the President of the Northeast Apple Growers Council, to be approximately ten million dollars, which will probably result in bankruptcy to a number of the growers, as well as the loss of a substantial portion of this year's apple crop.

## CONCLUSIONS OF LAW

1. Under 8 U.S.C. § 1101(a)(15)(H)(ii), the Attorney General is authorized to admit aliens into the United States as non-immigrants for the purpose of performing temporary service or labor provided that United States workers are not available to perform such service or labor.

2. Under 8 U.S.C. § 1184(c), the Attorney General is required to consult with appropriate agencies of the United States before determining whether to admit such aliens. This function has been delegated to the Commissioner of the Immigration and Naturalization Service.

3. The Commissioner has established by regulation (8 C.F.R. 214.2(h)(3) that the Secretary of Labor shall be consulted in determining whether to admit such aliens.

4. The Secretary has established such procedures and pursuant thereto has made the determination which he has referred to the Commissioner that insufficient domestic workers are available and accordingly, foreign farm workers should

be imported for the purpose of this apple harvest.

5. The determinations of the Secretary and the Commissioner are in accordance with the provisions of statutory law and are predicated upon an adequate factual showing.

6. Unless foreign farm workers are granted visas for the purpose of participating in the apple harvest, irreparable injury will be sustained by the growers for they will lose a substantial portion of their crops and this loss will not equally be distributed in that some will lose their entire crop and be faced with bankruptcy.

7. Consideration of the public interest requires that these results be avoided and accordingly, the Court will deny the relief sought and dismiss the complaint.

8. The temporary restraining order heretofore issued is dissolved.